GRABLER MANUFACTURING COMPANY, APPELLANT, *v.*
KOSYDAR, TAX COMMR., APPELLEE.

[Cite as Grabler Mfg. Co. v. Kosydar (1973),
35 Ohio St. 2d 23.]

(No. 73-38—Decided June 27, 1973.)

24

26

*Messrs. Glander, Brant, Ledman & Newman, Mr. C. Emory Glander* and *Mr. James H. Ledman,* for appellant.
*Mr. William J. Brown,* attorney general, *Mr. Dwight C. Pettay, Jr.,* and *Mr. John C. Duffy, Jr.,* for appellee.

WILLIAM B. BROWN, J. Two questions are presented in this case: (1) Are the monies paid by Grabler as deficiencies pursuant to the lease agreement excepted from sales and use taxes? (2) What was the effective date of the repeal of the use-on-use exception?

Grabler paid to Commercial $8,314,711 in deficiency payments for two sales of equipment pursuant to their lease agreement. Appellant contends that these monies were paid as liquidated damages for breach of the lease contract and as such are not subject to Ohio sales or use tax.

The lease contained two alternate provisions for premature termination, Section 4 and Section 13. The record

clearly indicates that in this instance the provisions of Section 13 were followed. It provided in pertinent part that:

"Time is of the essence hereof. If lessee should default in the payment of any sum to be paid hereunder, or should breach or default in performance of any other of the conditions hereof, and such breach or default should continue for more than fifteen (15) days after written notice mailed by lessor to lessee specifying the breach or default, or if lessee should suspend business, or if there should be any change in, or termination of lessee's corporate existence, or if lessee should become insolvent * * * then in any of such events, lessor, at its option, may consider this equipment lease as being in default. Thereupon, lessor may (i) terminate this equipment lease and/or demand a return of all units to the destination specified by lessor, freight prepaid, and/or (ii) take possession of all units, without notice to or consent of lessee, for that purpose entering upon any premises owned or leased by lessee, without liability for any damages occasioned thereby. Lessor shall thereafter hold all units free and clear of this equipment lease and of any rights of lessee hereunder. The return or retaking of all units shall constitute termination of this equipment lease, unless lessor so notified lessee in writing. Lessor may lease all or any of the units to such persons, for such term and rentals, and upon such conditions as lessor may elect, and/or sell all or any of the units at private sale or sales, with five (5) days' prior written notice to lessee, at such price or prices and upon such terms as lessor may elect, or at public sale or sales, at which lessor may bid for and purchase any or all of the units."

The events necessary to effect a termination under that section occurred. Grabler closed down its plant and suspended business, as was attested to before the board's examiner.

The procedures that were followed in terminating the lease were virtually all those prescribed in Section 13. It provided that the lessor could enter upon Grabler's premises for the purpose of taking possession of its equipment;

the record indicates that the personnel of Control Data (the parent of Commercial) entered the plant, took control of the equipment, and made arrangements for its disposition. It provided that the lessor could dispose of the equipment at a "private sale"; and by such a sale the equipment was sold to Hayes and Acme. The only provision not followed was that providing for "5 days' prior written notice to lessee" before the sale or re-lease of the equipment. The record indicates, however, that there was prior oral notice to Grabler.

Section 13 also included a formula, in the event the lease was terminated, for computing the amount of money owed by the lessee to the lessor. It provided:

"After deducting lessor's expenses incurred in connection with such sales or leasing, the total proceeds of (i) such sale or sales, less the value of the units at the end of the term provided for herein, as determined by an independent appraiser selected by lessor, and (ii) such leasing with respect only to the balance of the term provided for herein, shall be subtracted from the then stipulated market value of the units as specified in the pertinent schedule attached hereto and made a part hereof. The remainder shall be *liquidated damages* for the breach hereof by lessee and shall be payable by lessee to lessor upon demand." (Emphasis added.)

It was the formula prescribed in subsection (i) that was used in arriving at the amount owed in deficiencies by Grabler to Commercial.

Since it was a condition precedent to a Section 13 termination which occurred, and since the procedures followed for effecting the termination were those prescribed in Section 13, the deficiencies paid by Grabler to Commercial were made pursuant to Section 13 and must be considered liquidated damages.

In holding that these sums were taxable, the Board of Tax Appeals said:

"* * * that the monies paid were amounts contracted for within the term of 'price' as defined under Revised

Code Section 5739.01(H) *supra,* and as such may not be removed from the price by terms of a contract entered into between the parties thereto.''

In defining terms used for sales tax purposes, R. C. 5739.01 provides in pertinent part:

"As used in Sections 5739.01 to 5739.31, inclusive, of the Revised Code:

''* * *

''(B) 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted * * *.

''* * *

''(H) 'Price' means the aggregate value in money of anything paid or delivered, or promised to be paid or delivered, in the complete performance of a retail sale, without any deduction on account of the cost of the property sold, cost of materials used, labor or service cost, interest or discount paid or allowed after the sale is consummated, or any other expense. Price does not include the consideration received for labor or services * * *.''

"Price," as used in rental contracts, is further explained in R. C. 5739.02(A) as follows:

"In the case of a sale, the price of which consists in whole or in part of rentals for the use of the thing transferred, the tax shall, as regards such rentals, be measured by the installments thereof.''

The monies paid by Grabler as a deficiency, even though paid in accord with the terms of a lease contract, cannot be included within the definition of "price" in R. C. Chapter 5739, and hence are not taxable. Further, the monies paid were specifically labeled in the lease contracts as "liquidated damages.''

Black's Law Dictionary (4 Ed.) defines "rent" as "consideration paid for use or occupation of property.''

The essence of this definition is an *exchange* of some consideration paid for the use of something. In the instant

case, the monthly rental installments were paid by Grabler to Commercial Credit Corporation as the consideration for use of the equipment. The monies paid as a deficiency by Grabler were not paid for the use of something; nor were they paid in exchange for anything.

R. C. 5739.02(A) requires that sums taxable as rental payments be measured by "installments." Installments are regular payments, such as the monthly payments specified in Schedule 1 of the lease. No one can stretch his imagination to consider a payment of $3 or $4 million as an installment.

The distinction between rent paid for the use of something and damages paid for breach of the agreement to use was discussed by the Court of Appeals for Franklin County in *South Main Akron* v. *Lynn Realty* (1951), 62 Ohio Law Abs. 103, 106:

"We have a situation in the case at bar wherein the plaintiff is not suing for rent but is suing for an alleged breach of covenant existing by reason of the privity of contract, there being no privity of estate between the plaintiff and the defendant, Lynn Realty Company. The ground upon which the plaintiff's action rests is also 'essentially different from that of the liability to pay rent.' *Taylor* v. *DeBus, supra* [31 Ohio St. 468]. Though the liability of a tenant to a landlord for the payment of rent is double, there is both privity of estate and privity of contract. * * * The classical exposition of this doctrine of the double aspect of the obligation of a lessee is in *Walker's Case,* 2 Coke, 22 a. (1587) where an action of debt was held to lie against an original lessee for rent which accrued after an assignment by him—'for the privity of contract remains notwithstanding the assignment.' This analysis of the relation has not been questioned seriously since *Walker's Case* and under such an analysis, while a lessee cannot be held for 'rent' (in the property sense) which has not accrued, he nevertheless can be held for *damages* which have arisen from his breach of contract. Such damages are not the rent, although the amount of the reserved rent natur-

ally bears on the determination of the damage, along with other factors. * * *'' (Emphasis added.)

Accordingly, the sums paid by Grabler to Commercial as deficiencies for default on the lease contract are liquidated damages; and since the amounts paid as liquidated damages are not considered as part of the "price" in R. C. 5739.01, nor rental installments in R. C. 5739.02, no sales or use tax can be assessed on those monies.

Therefore, in this respect, the decision of the Board of Tax Appeals is unreasonable and unlawful.

The second question concerns the effective date of the repeal of R. C. 5739.02(B) (17), the use-on-use exception. The amended section was passed as Amended Substitute Senate Bill 350 (132 Ohio Laws 1990) in 1967. The Board of Tax Appeals held that:

"* * * the effective date of the repealer of the use-on-use exemption as not being a law providing for a tax levy and not being passed as emergency legislation," was "on December 1, 1967."

To determine the effective date of the repealer it is necessary to construe Sections 1c and 1d, Article II of the Ohio Constitution, which govern the effective date of legislation. Section 1c of Article II provides, in pertinent part:

"* * * No law passed by the General Assembly shall go into effect until ninety days after it shall have been filed by the Governor in the office of the Secretary of State, except as herein provided. * * *"

Exceptions to this general rule are listed in Section 1d of Article II as:

"Laws providing for tax levies, appropriations for the current expenses of the state government and state institutions, and emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. * * *"

This court in State, ex rel. Donahey, v. Roose (1914), 90 Ohio St. 345, held that legislation "providing for a tax levy of one-half of one mill on all taxable property within the state" fell within the excepted class of "laws provid-

ing for tax levies'' provided for by Section 1d of Article II, Ohio Constitution, and that the law went into effect immediately when approved and signed by the Governor.

In *State, ex rel. Keller,* v. *Forney* (1923), 108 Ohio St. 463, the third paragraph of the syllabus construed this section of the Constitution, as follows:

''The express language, 'laws providing for tax levies,' is limited to an actual self-executing levy of taxes, and is not synonymous with laws 'relating' to tax levies, or 'pertaining' to tax levies, or 'concerning' tax levies, or any agency or method provided for a tax levy by any local subdivision or authority.''

The statute in question in the instant case is a repealer of R. C. 5739.02(B) (17), enacted in 1961 by Amended Substitute H. B. 374 (129 Ohio Laws 1336). That statute was a tax levy that read:

''For the purpose of providing revenue with which to meet the needs of the state for poor relief in the existing economic crises, for the use of the general revenue fund of the state, for the purpose of securing a thorough and efficient system of common schools throughout the state, and for the purpose of affording revenues, in addition to those from general property taxes, permitted under constitutional limitations, and from other sources, for the support of local governmental functions, and for the purpose of reimbursing the state for the expense of administering Sections 5739.01 to 5739.31, inclusive, of the Revised Code, an excise tax is hereby levied on each retail sale made in this state.

''(A) The tax is as follows * * *.''

That law was ''an actual self-excuting levy of taxes'' as the *Forney* court required; it was not a statute merely relating or pertaining to a tax levy, and therefore it went into effect immediately because it fit within an excepted class in Section 1d of Article II.

The repeal of the exception had the effect of making sales that were formerly excepted subject to the tax ac-

cording to rates provided in R. C. 5739.02(A). So the effect of the repealer was to levy a tax on the sale "of tangible personal property for use or consumption directly in the production * * *." It was not legislation merely related to or pertaining to a tax levy. There is no reason to treat taxation levied as the result of the repeal of a tax exception any different from the initial levy of the tax.

Furthermore, in construing the Ohio Constitution, this court is required to follow " ' * * * the simple language of the plain people and it is to receive such meaning as they usually give to it in political discussions and arguments,' " as this court, in *Forney, supra* (108 Ohio St. 463), at 466, said, quoting from *State, ex rel. Greenlund,* v. *Fulton* (1919), 99 Ohio St. 168. The definition of "levy," in Webster's Third New International Dictionary, is "the imposition or collection of an assessment, tax * * *." The repealer fits that definition (as an imposition of taxation) for, in effect, it levies a tax on persnal property, which formerly was not taxable by virtue of an exception.

This construction is in accord with our previous decision in *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 174, where it was stated:

"* * * R. C. 5739.02(B) (17) was repealed, effective September 1, 1967 (Amended Sub. S. B. No. 350, 132 Ohio Laws 2308) * * *."

Accordingly, where the repeal of a tax exception effects a tax on a group of transactions which were formerly excepted, we hold that the repealer is included in the class of "laws providing for tax levies" which go into immediate effect as provided in Section 1d of Article II of the Ohio Constitution. Therefore, the effective date of this repealer was September 1, 1967; and accordingly the transactions of appellant that occured after September 1, 1967, that formerly were excluded by the exception, are taxable.

The decision of the Board of Tax Appeals regarding the effective date of the repealer is unreasonable and unlawful.

For the foregoing reasons the decision of the Board of

34

Tax Appeals is reversed and the cause is remanded to that board for further proceedings.

*Decision reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and CELEBREZZE, JJ., concur.

PAUL W. BROWN, J., dissenting. The decision of the Board of Tax Appeals, that the monies paid as "damages" were amounts contracted for within the term of "price," as defined in R. C. 5739.01(H), were monies paid in complete performance of a sale, and were subject to the tax, is in my opinion both lawful and reasonable. I would affirm the board in this regard.