YOUNGSTOWN SHEET & TUBE COMPANY, APPELLEE, *v.*
LINDLEY, TAX COMMR., APPELLANT.

(No. 78-380—Decided December 7, 1978.)

304.

*Messrs. Porter, Wright, Morris & Arthur, Mr. Roger F. Day* and *Mr. William J. Kelly, Jr.,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellant.

WILLIAM B. BROWN, J. The main issue presented by the instant cause is whether it was reasonable and lawful for the board to find that demurrage charges are excepted from use tax, pursuant to R. C. 5739.02(B) (11), as costs for the "transportation of persons or property."[3]

---

[3]Youngstown also maintains that subjecting demurrage costs to sales and use taxation would violate (1) the Commerce Clause of the United States Constitution and (2) the intent of the General Assembly when it levied an excise tax on public utilities under R. C. Chapter 5727. Since we find Youngstown's demurrage costs to be excepted from

Pursuant to R. C. 5739.02 and 5741.02, the state of Ohio levies a sales or a use tax on all tangible personal property sold at retail or stored, used or consumed within its borders. R. C. 5739.02 levies a sales tax on any property sold in the state. R. C. 5741.02 levies a use tax on any property sold out of state but stored, used or otherwise consumed in-state. R. C. 5741.02(C)(1) and (2) equalize the tax burden imposed on in-and out-of-state sales by excepting from state use tax any property sold in the state on which a sales tax has been paid (R. C. 5741.02 [C][1]), or any property "the acquisition of which, if made in Ohio, would be a sale not subject to the tax imposed by sections 5739.01 to 5739.31 of the Revised Code." (R. C. 5741.02[C][2].)

The property so excepted from use tax by R. C. 5741.-02(C)(2) might not be subject to sales taxes either because it is not encompassed by R. C. Chapter 5739 or because it falls within an exception enumerated in R. C. Chapter 5739. Therefore, before we review the board's determination that demurrage costs are excepted from use tax, we must initially determine if they fall within the state sales and use tax provisions.[4]

### I.

Youngstown asserts that demurrage fees are not subject to use or sales taxes because (1) such fees are not consideration "for the transfer of title or possession of tangible personal property or consideration for a license to

tax pursuant to R. C. Chapter 5739.02(B)(11), we do not find it necessary to address these additional arguments.

[4]The tax assessed by the commissioner on demurrage costs is a use tax. Therefore, we must determine whether demurrage charges fall within the definitions of "use" supplied in R. C. Chapter 5741. Moreover, since the use tax is imposed only in lieu of the sales tax (R. C. 5741.-02[C][1] and [2]), we must also determine if the board reasonably and lawfully found that demurrage charges may be subject to sales taxes. However, because the statutory definitions of use and sale overlap (R. C. 5741.01[B] and [C] and R. C. 5739.01[E]) and any analysis of one tax necessarily entails drawing on the definitions supplied in the chapter regulating the other, we may treat the taxability of demurrages under either use or sales taxes as a single question.

use tangible personal property"; and (2) "[d]emurrage charges represent damages or a penalty for the detention of rail cars" and are, therefore, not subject to use taxes under the holding of *Grabler Mfg. Co. v. Kosydar* (1973), 35 Ohio St. 2d 23.

We are not persuaded that *Grabler, supra,* controls the instant cause. The first paragraph of the syllabus in that case states:

"Where a leasing contract provides that liquidated damages be paid in the event of a breach thereof and the property which is the subject of the lease *is no longer used or available for use* by the defaulting party, the monies paid as damages are not included within the meaning of 'sale' and 'selling' as used in R. C. Chapter 5739.01, and 'price,' as used in R. C. 5739.02; hence they are not subject to the Ohio sales tax." (Emphasis added.)

In *Grabler,* the taxpayer was assessed sales taxes on money paid under an equipment lease contract after the taxpayer defaulted on the lease and the equipment was sold. That money was not compensation for the use of the equipment, but damages (which were clearly labelled as such under the lease) for defaulting on the lease agreement. In the words of the *Grabler* opinion, at page 30, "[t]he monies paid as a deficiency by Grabler were not paid for the use of something; nor were they paid in exchange for anything." *Grabler* does not control the instant cause, therefore, unless demurrage charges are merely damages and are not, in fact, paid in exchange for the use of something.

Demurrage fees are not merely damages. They may serve to deter the slow loading and unloading of railroad cars, but that is not their only function. Demurrage charges also serve " ' to secure compensation for the use of the car * * *.' " *ICC v. Oregon Pacific Industries, Inc.* (1975), 420 U. S. 184, 189, citing *Turner Lumber Co. v. Chicago M. & St. P. R. Co.* (1926), 271 U. S. 259, 262. As a result, unlike the damages held not subject to sales or use taxes in *Grabler, supra,* demurrage charges are paid in exchange for the use of something.

Because Youngstown's demurrage costs are paid in exchange for the use of something, they fall within the purview of Ohio's use and sales tax provisions. R. C. 5741.-02 levies a tax against the *storage, use* or other consumption of such property in-state and makes each consumer storing or using that property liable for the tax. R. C. 5739.-02 levies a tax against the in-state *sale* of tangible personal property. The sales tax chapter defines sales, in pertinent part, as "transactions by which * * * a license *to use* or consume tangible personal property is or is to be granted * * * for a consideration * * *." (Emphasis added.) (R. C. 5739.01[B].) "Use" is defined, in R. C. 5741.01(C), as "* * * the exercise of any right or power incidental to the ownership of the thing used." "Storage" is defined, in R. C. 5741.01(B), as "* * * any keeping or retention in this state for use or other consumption in this state." Finally, under R. C. 5741.01(D) and (F), a consumer is one who purchases—or acquires for a consideration— tangible personal property for storage, use or other consumption.

The railroad cars in question are clearly *used*. Witnesses testified before the board that (1) the demurrage charge is the only sanction imposed on Youngstown for keeping the cars beyond the free period; (2) as long as Youngstown is willing to pay the demurrage charge, it may keep the railroad cars; and (3) at least some businesses or individuals possibly detain railroad cars beyond the free period to use them as temporary warehouses. In light of the above testimony, it is clear that Youngstown exercises a right or power incidental to ownership when it stores railroad cars indefinitely at its loading docks. Since it exercises a power of ownership over the cars it keeps at its loading docks, Youngstown *uses* those cars pursuant to R. C. Chapters 5739 and 5741. Moreover, Youngstown uses those cars in-state. Indeed, if Youngstown did not keep those cars at its Ohio plants, it would not incur demurrage fees in-state, and the commission would have no jurisdiction to tax demurrage fees.

Finally, Youngstown clearly acquires the use of those

cars for a *consideration*. Each day beyond the free period that Youngstown keeps those cars it is charged a fee—a demurrage fee which is exacted at least, in part, as "compensation" for their use. *Turner, supra,* at page 262. Since Youngstown acquires railroad cars for a consideration and uses them, Youngstown is a consumer, pursuant to R. C. 5741.01(D) and (F). As such, Youngstown is liable for use or sales taxes on the price of that property. We find, therefore, that it was reasonable and lawful for the board to conclude that the monies paid by Youngstown in demurrage fees fall within the purview of Ohio's sales and use tax provisions. (For similar treatment of demurrage charges under New York's use and sales tax, see *Albany Calcium Light Co., Inc.,* v. *State Tax Comm.* [1977], 55 A. D 2d 502, 391 N. Y. Supp. 2d 201.)

## II.

Having found that appellee's demurrage costs fall within the purview of the sales and use tax provisions of R. C. Chapter 5739 and 5741, we must next determine the reasonableness and lawfulness of the board's determination that demurrage charges are made in a transaction for the "transportation of persons or property" and are, therefore, excepted from use taxes pursuant to R. C. 5739.-02(B)(11).

The term "transportation" is not defined in the use or sales tax chapters of the Ohio Revised Code. The commissioner contends that, in the absence of such a definition, the board should have applied the dictionary meaning of the word "transportation" to determine whether demurrage charges are included within it. The commissioner argues further that, if the board had applied a dictionary definition of transportation in the instant cause, it could not have reasonably and lawfully found that the transportation exception of R. C. 5739.02(B)(11) applies to demurrage costs.

While it is true that demurrage is not a "transportation" cost under the dictionary definition of transporta-

tion,[5] we are not persuaded by the commissioner's argument. It is established law in Ohio that, where a word has a technical definition differing from its dictionary definition, it shall be construed according to the former. (R. C. 1.42.)

"Transportation," as applied to demurrage charges, has such a technical meaning. Railway demurrage charges are creatures of federal regulation. Under Section 6(1), Title 49, U. S. Code, common carriers are required to keep open for public inspection schedules showing rates, fares and charges for transportation. The federal courts have interpreted those charges for transportation to include demurrage charges. In *Swift & Co.* v. *Hocking Valley Ry. Co.* (1917), 243 U. S. 281, the United States Supreme Court found, for purposes of the Act to Regulate Commerce, that transportation did not end when cars were under lading and that, therefore, demurrage charges were "transportation" costs. Demurrage charges have been found to be part of transportation costs in other cases as well. See *Turner, supra*; *United States* v. *Philadelphia & R. Ry. Co.* (E. D. Pa. 1910), 184 F. 543; and *Lehigh Valley R. Co.* v. *United States* (C. A. 3, 1911), 188 F. 879.

Given the long-standing federal treatment of demurrage fees as transportation costs, we find the board's determination that demurrage fees are excepted from use tax under R. C. 5739.02(B)(11), to be reasonable and lawful.

The decision of the Board of Tax Appeals is, therefore, affirmed.

*Decision affirmed.*

LEACH, C. J., HERBERT, P. BROWN, SWEENEY and LOCHER, JJ., concur.

CELEBREZZE, J., dissents.

---

[5]Webster's Third New International Dictionary defines "transport" in the following manner: "to transfer or convey from one person or place to another." "Transportation" is "an act, process or instance of transporting or being transported."