OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


OsAir, Inc., Appellant, v. Limbach, Tax Commr., Appellee.
[Cite as OsAir, Inc. v. Limbach (1993),     Ohio St. 3d    .]
Taxation -- Sales tax -- R.C. 5739.02 -- Cylinders used to
     deliver industrial gases -- Charges for retention of
     cylinders subject to tax, when.
     (No. 92-510 - - Submitted October 30, 1992 -- Decided June
23, 1993.)
     Appeal from the Board of Tax Appeals, No. 87-A-893.
     OsAir, Inc., appellant herein, manufactures and sells
industrial gases, primarily to companies for use in welding.
OsAir compresses and pumps gas, under high pressure, into
cylinders which it then delivers to its customers.  Initially,
OsAir charges customers only for the gas purchased and not for
the use of the cylinders.  However, under OsAir's "Gas
Shipper"  agreement with its customers, if customers keep the
cylinders beyond a specified free period, OsAir charges sixteen
cents per day per cylinder as "demurrage."
     The Tax Commissioner, appellee herein, assessed sales and
use taxes on these transactions for the audit period of April
1, 1982 through April 30, 1983, because the transfer of
possession of cylinders to customers constituted a sale of the
cylinders, and the demurrage charges were the consideration
paid for such sales.
     On appeal to the Board of Tax Appeals ("BTA"), OsAir
contended that the charges were not taxable because:  (a) the
demurrage charges are a non-taxable penalty under Grabler Mfg.
Co. v. Kosydar (1973), 35 Ohio St. 2d 23, 64 O.O. 2d 14, 298
N.E.2d 590; (b) the cylinders are used to transport property
and are exempt under R.C. 5739.02 (B)(11); and  (c) the
cylinders being sold are a package, specifically exempt under
R.C. 5739.02 (B)(15).  The BTA rejected appellant's contentions
and affirmed the order of the commissioner.
     The cause is now before this court upon an appeal as of
right.

     Dworkin & Bernstein Co., L.P.A., and Patrick J. Perotti,
for appellant.
     Lee I. Fisher, Attorney General, and Janyce C. Katz,

Assistant Attorney General, for appellee.

Per Curiam.  For the reasons that follow, we affirm the decision of the BTA.

OsAir formerly conducted business under the name of Osborne Brothers Welding Supply, Inc.   In Osborne Bros. Welding Supply, Inc. v. Limbach (1988), 40 Ohio St. 3d 175, 532 N.E. 2d 739, we affirmed the appellate court, which held similiar transactions taxable.

The instant appeal bears a strong similarity to Osborne Bros., supra.  The appellant is the same party as in Osborne Bros., except that its name has been changed.  Essentially the same propositions of law were raised as in the prior case.  The same sales agreement appears to have been used, and, insofar as the record reflects, the same practices were employed by appellant in its business.

As to OsAir's first contention - - that the demurrage charges are a non-taxable penalty - - OsAir's Gas Shipper agreement specifically requires payment of a charge of sixteen cents per day per cylinder beyond a specified free period for failure to return cylinders as agreed.  The BTA was correct in finding that OsAir failed to establish that the charges were a penalty and not a charge paid in exchange for use of the cylinders.  See Osborne Bros. supra.  Thus, we reject OsAir's first contention.

Likewise, as in Osborne Bros., we reject OsAir's  second contention - - that the charges  are exempt from taxation pursuant to R.C. 5739.02 (B) (11) - - for the reason that "[t]he cylinder is not the method of transporting the industrial gas; it is merely the container in which the purchased gas is placed."  Id. at 178, 532 N.E. 2d at 742.

OaAir's third contention - - that the charges are exempt from taxation under R.C. 5739.02(B)(15) - - requires more scrutiny.  We did not consider this claim in Osborne Bros., because the issue was not properly presented to us.  Now, it is.

Former R.C. 5739.02(B)(15) provided at the time of the audit period that the tax does not apply to "sales * * *  of packages * * * and material for use in packaging tangible personal property produced for sale, or sold at retail.  Packages include * * * other similar devices and containers * * *."  OsAir argues that cylinders used to hold the gas which it sells to customers are packages, and under the plain language of the statute, the packaging exemption applies.  We disagree.

R.C. 5739.02 levies a tax on "each retail sale made in this state."  R.C. 5739.03 provides that the tax "shall be paid by the consumer to the vendor."  It is axiomatic that a provision creating an exemption from taxation must be strictly construed and that exemption is the exception to the rule.  Am. Soc. for Metals v. Limbach (1991), 59 Ohio St.3d 38, 40, 569 N.E. 2d 1065, 1067.

The exemption for packages is available to the consumer (OsAir's customer) and not to the vendor (OsAir), and the record does not disclose that OsAir's customers executed exemption certificates, as required, at the time of purported nontaxable sales.  Further, the BTA correctly found that OsAir did not present evidence to show that OsAir's customers acquired the cylinders "for use in packaging tangible personal

property produced for sale, or sold at retail."

The decision of the BTA, that the subject transactions were taxable, is reasonable and lawful, and it is affirmed.

Decision affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Resnick and F.E. Sweeney, JJ., concur.

Wright and Pfeifer, JJ., dissent.

OsAir v. Limbach

Pfeifer, J., dissenting. In a four-to-three decision in Osborne Bros. Welding Supply, Inc. v. Limbach (1988), 40 Ohio St. 3d 175, 532 N.E.2d 739, this court decided that the sixteen-cent-per-day "demurrage fee" charged by the appellant supplier was a charge for use subject to Ohio sales tax and not a non-taxable penalty. This court in Osborne Bros. ruled that the proof offered by appellant was insufficient to demonstrate that the fees charged constituted penalties. In this case, appellant presented clarifying evidence which was sufficient to prove that the charges in question were indeed non-taxable penalties.

The character and implementation of OsAir's "demurrage fee" policy demonstrate that the fees were penalties rather than charges for use. The overriding and clear purpose of the policy was to secure the return of empty cylinders. OsAir had a total supply of fifty thousand cylinders and delivered approximately thirty thousand filled cylinders per month. Since OsAir operated on such a margin, it was important that it implement a policy to help ensure the prompt return of the cylinders so that they could be refilled and redistributed. OsAir's "Gas Shipper" contract grants each buyer the opportunity to extend the free-use period beyond the normal thirty days through a written agreement. Thus, the length of time the buyer kept the cylinders was not as important as it was for OsAir to identify when it could expect the cylinders' return. The negotiable free-use period allowed OsAir to plan. The sixteen-cent-per-day penalty was in place to help enforce the terms of the contract, and to thus enforce the timely return of the cylinders. OsAir explained to its customers that the demurrage fee was a penalty for not returning the cylinders.

It seems that the majority would not require sales and use taxes to be paid for empty, non-returned cylinders, but would require it to be paid for the amount of time there was gas in the cylinders past the free-use period. The majority requires OsAir to be a mind-reader, determining the motivation behind the late return of as many as thirty thousand cylinders. OsAir did its best by trying to predict, with the help of its customers, how long the cylinders were needed. The point the majority misses is that it was unimportant to OsAir why the cylinders were late-- the only relevant fact is that they were late. The lateness in and of itself adversely affected OsAir's business.

In Grabler Mfg. Co. v. Kosydar (1973), 35 Ohio St. 2d 23, 64 O.O.2d 14, 298 N.E.2d 590, this court found that sales or use taxes cannot be assessed on monies paid as liquidated damages that are not considered to be part of the "price" as defined by R.C. 5739.01, nor on rental installments as defined in R.C. 5739.02.. In Youngstown Sheet & Tube Co. v. Lindley (1978), 56 Ohio St. 2d 303, 10 O.O. 3d 423, 383 N.E.2d 903,

this court held that Grabler did not apply because the demurrage charge in that case was more than a charge for damages. The Younstown court found that the charge was paid in exchange for the use of railroad cars, which made the Grabler syllabus language inapplicable. The Youngstown decision was relied on by this court in Osborne Bros.

In Youngstown, the charges at issue were related to the use of railroad cars. Inbound raw materials and outbound steel products were shipped to and from Youngstown's plants in train cars owned by a number of railroad companies. Whenever Youngstown failed to meet a specified deadline for loading and unloading and returned a railroad car late, it was charged a demurrage fee by the railroad company that delivered the car to the plant.

The facts presented in the instant case serve to distinguish OsAir's practices from those of the railroad companies in Youngstown.

First, in Youngstown, the charged use of the railroad cars was closely related to the original service performed by the railroad companies. Youngstown did not pay the railroad companies for a tangible commodity, but instead paid for the use of the railway lines and for the use of railroad cars for the shipping of the commodities it needed. A charge for the continued use of those railroad cars was the logical extension of the service originally contracted for. In the present case, however, OsAir was in the business of selling gases. OsAir's customers were paying for a tangible commodity. The charge for overdue cylinders is not a logical extension of the original transaction, and thus was more easily identifiable as a penalty than were the fees paid in Youngstown.

Second, in Youngstown the only reason to keep the railroad cars was to use them -- the cars remained on the railroad tracks near the loading docks. Here, the cylinders were taken immediately to their point of use somewhere within the customer's plant. When the cylinders were depleted, they were in many cases far from the loading dock. The only way to force customers to gather and return the spent cylinders was to charge them a penalty for not retrieving the cylinders. There had to be an economic impetus to force the buyers to undertake that otherwise worthless task. In Youngstown, the cars were on the tracks ready to be retrieved. The only reason that they could not be retrieved is that Youngstown had been using them for storage. Absent that use, they were ready to be picked up. No economic impetus, or penalty, was necessary to put them in a convenient spot for retrieval.

Third, Youngstown was always credited with the same two-day "free time" period to unload or load each railroad car. There was no indication in Youngstown that the term of the free-use period was ever negotiable. In the present case, OsAir did vary the contracted free-use period depending on the use history of the buyer. An effort was made not to charge the customer for the use of the cylinders, which is further evidence that any charge that was applied was a penalty.

OsAir's sixteen-cent-per-day demurrage fee may realistically only be described as a penalty. As such, Grabler controls and no sales and use taxes should be assessed on the penalties collected by OsAir.

Wright, J., concurs in the foregoing dissenting opinion.