OPINION
{¶ 1} Appellant, The State Medical Board of Ohio ("board"), appeals from a decision of the Franklin County Court of Common Pleas in favor of appellee, Joseph Hoffman, in a declaratory judgment action brought by appellee seeking interpretation of Ohio Revised Code sections and Ohio Administrative Code rules governing the scope of procedures that may permissibly be undertaken by certified anesthesiologist assistants in Ohio.
 {¶ 2} Appellee, a certified anesthesiologist assistant, initiated this action with a complaint seeking declaratory and injunctive relief against the board on the basis that a conflict existed between an administrative rule adopted by the board, Ohio Adm. Code 4731-24-04(A), and the Ohio statute governing the practices of anesthesiology assistants, R.C. 4760.09. The principal contention is that the administrative rule improperly precludes anesthesiologist assistants from performing by themselves epidural anesthetic procedures and spinal anesthetic procedures, which, appellee contends, anesthesiologist assistants are specifically permitted to perform under the Ohio Revised Code section governing their practice.
 {¶ 3} The matter was decided by the trial court on cross-motions for summary judgment. The court rendered a judgment granting summary judgment in favor of appellee and denying summary judgment for the board. The board has timely appealed and brings the following assignment of error:
The Trial Court Erred In Holding That Ohio Adm. Code 4731-24-04(A) Is In Conflict with R.C. 4760.09.
 {¶ 4} We initially note this matter was decided in the trial court by summary judgment, which under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64.
 {¶ 5} An appellate court's review of summary judgment is de novo. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; PatsyBard v. Society Natl. Bank, nka KeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995),106 Ohio App.3d 440, 445. As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. Bard.
 {¶ 6} The present matter is exclusively one involving statutory interpretation and the parties properly agree that little outside the language of the two purportedly conflicting provisions is relevant to the matter. R.C. 4760.09, enacted in 2000, governs the authorized scope of practice by anesthesiologist assistants. The section provides in its entirety as follows, with subsections (C) and (G) being specifically at issue in this case, our emphasis supplied therein, and the balance of the language provided for context:
If the practice and supervision requirements of section 4760.08 of the Revised Code are being met, an anesthesiologist assistant may assist the supervising anesthesiologist in developing and implementing an anesthesia care plan for a patient. In providing assistance to the supervising anesthesiologist, an anesthesiologist assistant may do any of the following:
(A) Obtain a comprehensive patient history and present the history to the supervising anesthesiologist;
(B) Pretest and calibrate anesthesia delivery systems and monitor and obtain and interpret information from the systems and monitors;
(C) Assist the supervising anesthesiologist with the implementation of medically accepted monitoring techniques;
(D) Establish basic and advanced airway interventions, including intubation of the trachea and performing ventilatory support;
(E) Administer intermittent vasoactive drugs and start and adjust vasoactive infusions;
(F) Administer anesthetic drugs, adjuvant drugs, and accessory drugs;
(G) Assist the supervising anesthesiologist with the performance of epidural anesthetic procedures and spinal anesthetic procedures;
(H) Administer blood, blood products, and supportive fluids.
 {¶ 7} After enactment of the statute, in May of 2003, the board voted to adopt Chapter 4731.24 of the Ohio Administrative Code amplifying the statute by setting forth more detailed administrative rules for anesthesiologist assistants. Among the enacted sections, Ohio Adm. Code4731-24-04(A) specifically precluded anesthesiologist assistants from performing epidural and spinal anesthetic procedures or performing invasive monitoring techniques:
Nothing in this chapter of the Administration Code or Chapter 4760 of the Revised Code shall permit an anesthesiologist assistant to perform any anesthetic procedure not specifically authorized by Chapter 4760 of the Revised Code, including epidural and spinal anesthetic procedures and invasive medically accepted monitoring techniques. For purposes of this chapter of the Administrative Code, "invasive medically accepted monitoring techniques" means pulmonary artery catheterization, central venous catheterization, and all forms of arterial catheterization with the exception of brachial, radial and dorsalis pedis cannulaton.
 {¶ 8} The central issue in this case is the meaning to be given to the word "assist" as it is used in R.C. 4760.09(C) and (G). The board asserts that these sections must be read to mean that the anesthesiologist assistant may merely help the supervising anesthesiologist as the supervising anesthesiologist herself performs the specified procedures. Appellee asserts to the contrary that the statutory language should be interpreted to mean that the anesthesiologist assistant, by personally and independently performing the specified procedures, would help the supervising anesthesiologist in the overall performance of treatment and care.
 {¶ 9} "[A]dministrative agency rules are an administrative means for the accomplishment of a legislative end." Carroll v. Dept. of Adm. Serv.
(1983), 10 Ohio App.3d 108, 110. "The purpose of administrative rulemaking is to facilitate the administrative agency's placing into effect the policy declared by the General Assembly in the statutes to be administered by the agency." Id. Administrative rules will only be invalidated, therefore, in a declaratory judgment action upon a finding that the rules are "unreasonable or are in clear conflict with statutory enactments covering the same subject matter." Id.
 {¶ 10} We must accordingly determine whether the board's adoption of Ohio Adm. Code 4731-24-04 prohibiting anesthesiologist assistants from performing epidural and spinal anesthetic procedures and invasive monitoring techniques is in clear conflict with the statutory language of R.C. 4760.09 governing authorized activities of anesthesiologist assistants.
 {¶ 11} "The first rule of statutory interpretation is to give effect to the plain meaning of the words employed in the statute." State exrel. Ohio Dept. of Health v. Sowald (1992), 65 Ohio St.3d 338, 342. The parties in this case agree that a typical definition of the everyday meaning of the word "assist" is that found in Black's Law Dictionary (5 Ed. 1979) 111:
Assist. To help; aid; succor; lend countenance or encouragement to; participate in as an auxiliary. To contribute effort in the complete accomplishment of an ultimate purpose intended to be effected by those engaged.
 {¶ 12} If we are to apply this ordinary meaning of the term to R.C.4760.09(C) and (D), we can agree without further analysis that the legislature intended for anesthesiologist assistants to perform medically accepted monitoring techniques and epidural and spinal anesthetic procedures only by participating as an auxiliary to anesthesiologists who would principally perform the procedures themselves. If the legislature had chosen, rather than using the construction "assist with the implementation" or "assist with the performance," to state that anesthesiologist assistants would assist the supervising anesthesiologist "by the implementation" or "by the performance" of certain enumerated procedures, it might be understood that the anesthesiologist assistants would perform those procedures personally and independently at the behest of the supervising anesthesiologist. That was not the construction chosen by the legislature, and the language of R.C. 4760.09, if the ordinary meaning of "assist" is applied, is not reasonably acceptable of any other interpretation. If the ordinary meaning of "assist" is used, then, Ohio Adm. Code 4731-24-04 correctly reflects the statutory limitation on anesthesiologist assistants' scope of practice, and is lawful because the legislature clearly intended and expressed that anesthesiologist assistants would only act as auxiliaries to the supervising anesthesiologist in the implementation of invasive monitoring techniques or the performance of epidural anesthetic procedures and spinal anesthetic procedures.
 {¶ 13} Appellee asserts, however, that the term "assist" has a technical meaning in the medical profession that differs from its everyday meaning, and if the technical meaning is applied to R.C. 4760.09, an anesthesiologist assistant may function as the principal actor in performing the contested procedures. "It is established law in Ohio that, where a word has a technical definition differing from its dictionary definition, it shall be construed according to the former." YoungstownSheet Tube Co. v. Lindley (1978), 56 Ohio St.2d 303, 309. "If terms have acquired a particular or specialized meaning, either by way of legislative definition or by judicial construction, that meaning is to be ascribed to such terms." John Ken Alzheimer's Ctr. v. Ohio Cert. of NeedReview Bd. (1989), 65 Ohio App.3d 134, 138.
 {¶ 14} In support of summary judgment, appellee presented two elements of evidence in support of a technical definition of the word "assist." The affidavit of Dr. Joel Zivot, a practicing board-certified anesthesiologist, stated as follows:
12. As used in the medical field, the word "assist" has a technical meaning. To "assist" means "to perform the help that is needed by a physician." In other words, the meaning of the word "assist" includes the actual performance of procedures under appropriate circumstances, including spinal and epidural anesthetic procedures and medically accepted monitoring techniques.
Appellee provided his own affidavit to the same effect. Appellee buttresses this expert testimony on the special technical meaning of "assist" by asserting that appellant, itself, has adopted a specialized meaning for purposes of Ohio Adm-Code Chapter 4731-24 governing the practice of anesthesiology:
"Assist" means to carry out procedures as requested by the supervising anesthesiologist, provided that the requested procedure is within the anesthesiologist assistant's training and scope of practice, is authorized by the practice protocol adopted by the supervising anesthesiologist, and is not prohibited by Chapter 4731 or 4760 of the Revised Code, or by any provision of Chapter 4731 of the Administrative Code.
Ohio Adm. Code 4731-24-01(B). We acknowledge that appellee's expert testimony on the specialized meaning of "assist" in the medical profession was unrebutted for summary judgment purposes in the trial court. Likewise, the board has compromised its own position in this appeal by adopting in Ohio Adm. Code 4731-24-01(B) a definition of "assist" that tends to support appellee's position. We find, however, that this unrebutted evidence does not entitle appellee to judgment as a matter of law, because the existence of a specialized meaning within the profession, of itself, is not dispositive of the meaning intended by the legislature in drafting the statute if the legislature clearly intended for an everyday meaning to be inferred. Likewise, the specialized definition that the board adopts in Ohio Adm. Code 4731-24-01(B) is not dispositive of the legislature's intended meaning and, in fact, may be invalid in specific areas where it conflicts with an enabling statute that employs the same term with a different meaning.
 {¶ 15} In reconciling these opposing rules of statutory construction, that is, application of the common meaning of words in a statute versus application of a specialized technical meaning, we must seek to determine which best reflects the legislature's manifest aim in enacting the statute and choosing the words employed. A specialized definition or meaning that was not acknowledged or intended by the legislature should not be applied to achieve absurd results; the unique definition is applicable only where it has been adopted "by way of legislative definition or by judicial construction," John Ken Alzheimer's Ctr.,
supra.
 {¶ 16} This court's primary duty is to determine the intent of the legislature, Dreger v. Public Employees Retirement Sys. (1987),34 Ohio St.3d 17, 20, and to that end our "interpretation starts and ends with the words chosen by the legislature, but is not limited to the words alone, because the whole context of the enactment must be considered."State v. Cravens (1988), 42 Ohio App.3d 69. It is significant that the definitional section of R.C. Chapter 4760, R.C. 4760.01, whereas it defines various other terms as used in the statutes governing anesthesiology practice, does not contain a specialized definition of the term "assist." Moreover, applying the plain, everyday meaning of the term "assist" to the language of R.C. 4760.09(C)(G) gives the only interpretation that is consistent with the balance of the statute. A review of the statutory section as a whole supports this conclusion: Among the lists of permissible activities set forth in R.C. 4760.09, the legislature specified that anesthesiologist assistants could obtain, pre-test, calibrate, monitor, interpret, establish, and administer various procedures or processes. Only with respect to epidural anesthetic procedures, spinal anesthetic procedures, or implementation of medically accepted monitoring techniques, did the legislature choose to apply a limiting choice of words to the authorization, rather than the positive and unfettered authorization set forth with respect to other processes. The express enumeration of specific qualities, processes, or classes implies that the legislature intended to include all others. Ft. HamiltonHughes Memorial Hosp. Ctr. v. Southard (1984), 12 Ohio St.3d 263, 265. The variation between the authorization granted for various processes and procedures in R.C. 4760.09(C) and (G) and the other permissible functions of an anesthesiologist assistant must be presumed to have been deliberate, and the limiting nature of the term "assist" to have been fully intended and countenanced by the legislature. Had the legislature intended for anesthesiologist assistants to directly perform as principals the contested procedures, a more direct definition of their role would doubtless have been chosen, such as "perform," "establish," or "administer."
 {¶ 17} We conclude that there is no evidence that the legislature intended anything other than the plain meaning to be used in the statute, and that the ordinary meaning of "assist" is consistent with a regulatory prohibition upon the performance of the enumerated procedures under Ohio Adm. Code 4731-24-04(A). We accordingly find that the board has not promulgated a rule that is unreasonable or in clear conflict with the enabling statutory enactments covering the same subject matter, Stateex rel. DeBoe v. Indus. Comm. (1954), 161 Ohio St. 67. Appellant's enactment of Ohio Adm. Code 4731-24-04 is consistent with the limiting intent of the legislature under R.C. 4760.09, and we find no inconsistency between the provisions. The trial court erred in granting summary judgment for appellee and denying summary judgment for appellant, and appellant's assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and upon remand the court shall enter declaratory judgment for the State Medical Board of Ohio.
Judgment reversed; cause remanded with instructions.
Bryant and Sadler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.