JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Keith Williams appeals his conviction for burglary. He assigns the following two errors for our review:
"I. The trial court's verdict is based on insufficient evidence."
"II. The trial court's verdict is against the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Williams' conviction. The apposite facts follow.
 {¶ 3} At Keith Williams' bench trial for burglary and theft, the evidence showed that Officer Sabrina Sudberry and her partner received a radio broadcast regarding two African-American males breaking into a home located at 3016 East 77th Street. Upon arriving at the scene, the officers observed that the garage door was open and the front security door had been removed from its hinges. Officer Sudberry entered the home and found that it had been ransacked. Thereafter, she looked out the open back door and observed two men quickly carrying a washing machine; they were in the backyard of the house and headed in the direction of East 75th Street. She testified that one of the men was short and wearing jeans and a white t-shirt. The other man, later identified as Williams, was wearing jeans and a white tank top.
 {¶ 4} The officers encountered the two males as they approached a red Pontiac. When Williams saw the officers, he dropped the washer. The officers approached him with their guns drawn and ordered the both men to raise their hands. The unidentified man fled, but Williams did not, and the officers arrested him. The man in the red Pontiac also fled.
 {¶ 5} The officers checked the Pontiac's license plate and discovered the registered owner was Paul Menifee. His BMV photograph matched the description of the man who had fled from the car.
 {¶ 6} The officers remained on the scene until the victim, Shondra Burgin, arrived. Burgin informed the officers she was acquainted with Williams because he was a friend of her son. Williams had been to the home several times in the past. Burgin identified the washing machine as hers; she also identified her air conditioning unit, which the officers retrieved from the trunk of the Pontiac. Burgin stated that, along with these items, two other air conditioners, two television sets, two DVD players, and two computers were stolen. These items were not recovered.
 {¶ 7} Williams testified that he left his home about 10:00 a.m. to accompany his twelve-year-old cousin to the store on the cousin's motor scooter. On the way back from the store, Paul Menifee stopped him and requested that he help him load a washing machine into the car. Williams claimed that before he touched the washer, the police pulled up, hit him on the back of his head with an assault rifle, and arrested him. He stated at that point, Menifee jumped out of the car and ran. Williams could not explain how Menifee had transported the washing machine to East 75th
Street. He claimed he never touched the washer and contended there was no other person near it at the time the police arrived. Williams also claimed he was not wearing a shirt at the time, despite Officer Sudberry's testimony that he had been wearing a white tank top. Williams' booking photograph, depicting him without a shirt, was entered into evidence.
 {¶ 8} The trial court acquitted Williams of the theft charge, but found him guilty of burglary. The trial court sentenced Williams to two years in prison.
 Sufficiency of the Evidence {¶ 9} In his first assigned error, Williams argues the State failed to produce any direct or circumstantial evidence that he burglarized the home or aided and abetted in burglarizing the home. We disagree.
 {¶ 10} The sufficiency of evidence standard of review is set forth in State v. Bridgeman:[1]
"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[2]
 {¶ 11} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[3] in which the Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 12} R.C. 2911.12 defines the elements for burglary as follows: "(A) No person, by force, stealth, or deception shall do any of the following:
"* * *
(2) Trespass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with the purpose to commit in the habitation any criminal offense."
 {¶ 13} In the instant case, Officer Sudberry testified that she observed Williams and another individual carrying the washing machine in the backyard of the home. Because the washing machine was removed from inside the home, a reasonable inference can be made by the trier of fact that two people were needed to carry the washer from the home. Besides, the officer testified she saw Willliams with the washer in close proximity to the house. These facts circumstantially place Williams at the home.
 {¶ 14} Circumstantial evidence and direct evidence inherently possess the same probative value.[4] As the Court in Statev. Jenks held, "In some instances certain facts can only be established by circumstantial evidence. Hence, we can discern no reason to continue the requirement that circumstantial evidence must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt."[5]
Because circumstantial evidence is given the same weight as direct evidence, sufficient evidence was presented in support of Williams' burglary conviction. Accordingly, Williams' first assigned error is overruled.
 Manifest Weight of the Evidence {¶ 15} In his second assigned error, Williams argues his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 16} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held inState v. Thompkins:[6]
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's, supra, at 1594.
"* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 17} In the instant case, Williams claims his testimony was more credible than the testimony presented by the State because he testified that he was not wearing a shirt. His statement was supported by his booking photograph, which depicted him without a shirt. We agree his testimony and the booking photograph are contradictory to Officer Sudberry's testimony that she observed Williams, wearing a white tank top, carrying the washing machine through the backyard of the home. However, in spite of this contradiction, the trial court was in the best position to discern the credibility of the officer and Williams. The court believed the officer. We are in no position without more evidence to reverse this conclusion. We are reminded that Officer Sudberry was able to directly observe Williams carrying the washer and positively identified him. Besides, Williams could have removed his shirt before his arrest. Whether he had worn a short tank top is not as persuasive as the officer's positive identification of Williams as the man carrying the washer. The trial court concluded it was more reasonable that Williams was burglarizing the house as opposed to helping a person carry a washer, especially when he had frequented the house and was a friend of the owner's son.
 {¶ 18} Williams also contends the fact he was not sweating proves he was not involved in removing the washer from the home. However, the officer did not testify that Williams was not sweating, but that she could not recall whether he was sweating. She also stated that she does not usually include in her notes whether an arrested individual is sweating. Therefore, there was no evidence one way or the other regarding whether Williams was sweating. Williams' testimony that he was not sweating does not overcome the evidence that he burglarized the house.
 {¶ 19} Moreover, whether Officer Sudberry was a more credible witness than Williams was for the trier of fact to discern. The trier of fact is in the best position to observe the witness's demeanor, voice inflection, and mannerisms in determining each witness's credibility.[7] Accordingly, on issues of credibility, we defer to the fact finder.
 {¶ 20} Williams contends the trial court's acquitting him of theft requires the burglary offense to be vacated. We disagree. As the Ohio Supreme Court in State v. Gapen[8] explained:
"[I]nconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict * * *." State v.Hicks (1989), 43 Ohio St.3d 72, 78, 538 N.E.2d 1030, citingUnited States v. Powell (1984), 469 U.S. 57, 68,105 S. Ct. 471, 83 L. Ed. 2d 461; see, also, State v. Mapes (1985),19 Ohio St.3d 108, 112-113, 19 OBR 318, 484 N.E.2d 140. As we stated in State v. Adams (1978), 53 Ohio St.2d 223, 7 O.O.3d 393,374 N.E.2d 137, paragraph two of the syllabus, "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count."
 {¶ 21} Therefore, inconsistent verdicts on different counts in a multi-count indictment do not justify overturning a verdict of guilt. Accordingly, Williams' second assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed. The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Cooney, J., Concur.
[1] (1978), 55 Ohio St.2d 261, syllabus.
[2] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113.
[3] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[4] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus.
[5] Id. at 272.
[6] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[7] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[8] 104 Ohio St.3d 358; 2004-Ohio-6548, at ¶ 138.