JOURNAL ENTRY AND OPINION.
{¶ 1} Appellant Marchello Lumbus appeals his convictions for drug possession and possession of criminal tools. He assigns the following errors for our review:
 "I. Appellant's due process right to a fair trial was violated by the introduction of unfairly prejudicial 'other acts' evidence in violation of Evid.R. 404(B) and 403 without limiting instruction."
 "II. The trial court committed plain, reversible error by its ex parte, off-the-record communications with the jury during deliberations."
 "III. The appellant's state and federal constitutional rights to due process and to confront the witnesses against him were violated when the testimonial and hearsay statements of his co-defendants were introduced against him."
 "IV. The defendant was denied his right to effective assistance of counsel when defense counsel failed to protect his interest at trial."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Lumbus' convictions. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Lumbus on six counts, including three counts of drug trafficking, two counts of drug possession, and one count of possession of criminal tools.
 {¶ 4} On February 24, 2005 at around 10:00 p.m., Detectives Jeff Folmer and Michelle Rivera were conducting undercover drug buys in a strip mall parking lot located at Broadway and Union Avenue. This was a known high drug trafficking area.
 {¶ 5} The detectives asked Ronnie Overton, who was panhandling in front of one of the stores, whether he knew someone from whom they could purchase drugs. Overton used one of the detective's cell phones to place a call. After making the call, he told the officers someone would be there within ten minutes.
 {¶ 6} Approximately fifteen minutes later, Marchello Lumbus pulled up in a Thunderbird. While the detectives waited in the undercover car, Lumbus spoke with Overton in front of the store. He told Overton he was not going to complete the sale because the intended purchasers looked like undercover officers. Overton then told the officers that Lumbus could not obtain the drugs for them.
 {¶ 7} Lumbus then entered the passenger side of a pick-up truck in which two white females were sitting. The detectives radioed for back-up because they believed a drug transaction was taking place. As they approached the truck with their badges displayed, Lumbus and the two females saw them and panicked. Lumbus took off his hat and scarf, which the officers found later on the floor of the truck. They saw Lumbus moving around towards the middle of the vehicle and saw he was engaging in a pushing motion. When the officers ordered the occupants to put their hands up, it took Lumbus several moments longer than the two females to comply.
 {¶ 8} The officers opened the passenger side door and ordered Lumbus out of the vehicle. The back-up vehicles arrived and surrounded the truck. The middle passenger, Lisa Lobodinsky, looked panicked and yelled that Lumbus had just passed her drugs to hide. She pulled out a bag containing individually packaged crack cocaine baggies out of her pants.
 {¶ 9} The driver, Denise DePasquale, yelled that Lumbus had thrown the drugs to her side of the car. On the driver's side floor board the officers retrieved nineteen small bags of heroin containing quantities for individual use. A pat-down of Lumbus revealed he had two cell phones and $673 in cash. One of the cell phones had the detective's cell phone number on it.
 {¶ 10} The jury found Lumbus guilty of two counts of drug possession and one count of possession of criminal tools, but acquitted him of the two drug trafficking counts. The trial court sentenced Lumbus to a total of three years.
 Other Acts Evidence {¶ 11} In his first assigned error, Lumbus argues the trial court erred by allowing Overton and Lobodinsky to testify that they had purchased drugs from Lumbus on prior occasions. Lumbus also argues the trial court compounded the error by refusing to give the jury a limiting instruction regarding this evidence.
 {¶ 12} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court."[1] Accordingly, we proceed under an abuse of discretion standard. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[2]
 {¶ 13} Evid.R. 404(B) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 14} In the instant case Richie Overton and Lisa Lobodinsky testified that they had purchased drugs from Lumbus on prior occasions. However, this evidence was not used to show that Lumbus was acting in conformity with these prior acts. It was presented to show how Overton and Lobodinsky knew Lumbus. It was also presented to show Lumbus' mode of operation. That is, Overton and Lobodinsky would purchase the drugs through an arranged meeting with him over the telephone.
 {¶ 15} Moreover, even if the evidence was improperly admitted, it was harmless error. The evidence went towards proving the drug trafficking counts. However, the jury found Lumbus was not guilty of drug trafficking.
 {¶ 16} Lumbus also argues the trial court erred by not giving a limiting instruction to the jury regarding the consideration of the prior act evidence. However, counsel never requested a limiting instruction; therefore, absent plain error, this issue is waived.[3]
Plain error did not occur because the jury acquitted Lumbus of drug trafficking. Accordingly, Lumbus' first assigned error is overruled.
 Ex Parte Communication {¶ 17} In his second assigned error, Lumbus argues the trial court improperly engaged in ex parte communication with the jury when it answered their question regarding circumstantial evidence off the record. We disagree.
 {¶ 18} In the instant case, the jury wrote a note to the trial court stating that they had questions regarding circumstantial evidence. The trial court put the following evidence regarding its communications with the jury on the record:
 "At the time I went back to the jury room to find out what their plans were. They handed me a note and that note reads: 'Would the judge please talk to the jury regarding circumstantial evidence?' The fact that I received this note was disclosed both to Mr. Warbel and Mr. Mack.
 "Both Mr. Warbel and Mr. Mack agreed —— did not object to me addressing that with the jury off of the record and without their presence or their clients' presence at that time. I then went back to the jury room and indicated to the jurors that everything they have heard about circumstantial evidence and the law in regards to that is set forth in the instructions that have been given to them and asked them to leave for the evening.
 "In regards to that note, is that a correct representation as to what happened and are there any objections to it?"[4]
 {¶ 19} Both attorneys agreed that the court properly recited what occurred and no objections were made to the trial court's rendition of what occurred on the record.
Therefore, absent plain error, any error regarding the trial court's ex parte discussion has been waived.
 {¶ 20} There is no plain error because the outcome of the trial would not have been different had an objection been made. According to the discussion the trial court placed on the record, the court merely informed the jury that they received the law for circumstantial evidence when it instructed them, and the court would not provide any additional information on this instruction. Accordingly, Lumbus' second assigned error is overruled.
 Hearsay {¶ 21} In his third assigned error, Lumbus argues the trial court erred by allowing hearsay evidence to be introduced. We disagree.
 {¶ 22} Generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court and its decision to admit or exclude such evidence will not be disturbed absent an abuse of that discretion.[5] However, while the trial court has discretion to admit or exclude relevant evidence, it has no discretion to admit hearsay. Evid.R. 802 mandates the exclusion of hearsay unless any exceptions apply. Thus, we review de novo the trial court's decision regarding whether a statement is hearsay or non-hearsay under Evid.R. 801.[6] Lumbus argues the trial court improperly allowed hearsay to be admitted when it permitted the detectives to testify that Denise DePasquale yelled that Lumbus had thrown the drugs at her. We conclude DePasquale's statement constituted an excited utterance. Evid.R. 803(2) allows the admission of hearsay under the "excited utterance" exception, which is defined as, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 23} For a statement to be admissible as an excited utterance, (1) there must have been an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must have related to the startling event; and (4) the declarant must have personally observed the startling event.[7] "There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought."[8]
 {¶ 24} In the instant case, DePasquale was still under the stress of the excitement when she yelled to officers that Lumbus threw the drugs at her. Her statement came within seconds of the officers approaching the truck and ordering her out of the vehicle.
 {¶ 25} Moreover, even if DePasquale's statement did not constitute an excited utterance, its admission was harmless error. Lisa Lobodinsky testified to the fact that along with ordering her to hide the drugs in her pants, Lumbus threw the packets of heroin in the direction of DePasquale, causing them to hit the door and fall to the floor. Therefore, the admission of the statement did not alter the outcome of the trial as Lobodinsky testified to the same event.
 {¶ 26} Lumbus also argues the trial court improperly allowed Detective Follmer to testify that he believed the drugs were Lumbus' based in part on the statements made by DePasquale and Lobodinsky. However, the officer never testified to the contents of the statements that led him to believe the drugs were Lumbuses. He merely stated his conversation with the females were part of the reason he came to this conclusion. Therefore, no hearsay was admitted.
 {¶ 27} Finally, Lumbus argues the trial court improperly allowed Lobodinsky to testify that DePasquale told her she wanted to purchase the drugs from Lumbus because "he serves bigger." However, this statement was not admitted for the truth of the matter. Lobodinsky was explaining why she and DePasquale proceeded to the strip mall to purchase the drugs instead of purchasing the drugs from a drug dealer nearer to Lobodinsky's apartment. Accordingly, because the statements did not constitute hearsay, Lumbus' third assigned error is overruled.
 Ineffective Assistance of Counsel {¶ 28} In his fourth assigned error, Lumbus argues his counsel was ineffective for failing to request a limiting instruction regarding the prior acts evidence and not objecting to the trial court's ex parte communication. We disagree.
 {¶ 29} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington.[9] UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[10] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[11] Judicial scrutiny of a lawyer's performance must be highly deferential.[12]
 {¶ 30} We held in the first and second assigned errors that the trial court's failure to request a limiting instruction and its ex parte communication did not result in prejudicial error. Therefore, Lumbus has failed to show that but for his lawyer's deficient performance, the result of the trial would have been different. Accordingly, Lumbus' fourth assigned error is overruled.
 Sufficiency and Manifest Weight of the Evidence {¶ 31} In his fifth assigned error, Lumbus argues his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Lumbus argues there was no credible evidence that he was in possession of crack cocaine and no evidence that he used his cell phone or money for a criminal purpose.
 {¶ 32} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman[13]:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[14]
 {¶ 33} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[15] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 34} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held in State v. Thompkins[16]:
 "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks, supra, at 1594.
 "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 35} Lumbus contends there was no evidence he possessed the drugs or used the cellular phones for a criminal purpose. However, Lobodinsky testified to the fact that Lumbus had the drugs in his possession and that when he saw the police approaching, he threw the heroin towards DePasquale and ordered Lobodinsky to hide the cocaine in her pants. Therefore, there was evidence submitted that Lumbus possessed the drugs. Lobodinsky had a prior criminal history for drug abuse and admitted she was testifying in order to receive probation. However, whether she was credible was for the jury to ascertain. The trier of fact is in the best position to observe the witness's demeanor, voice inflection, and mannerisms in determining each witness's credibility.[17] Accordingly, on issues of credibility, we defer to the jury.
 {¶ 36} There was also evidence presented that Lumbus' cellular phones and money were used for criminal purposes. Overton used the detective's cell phone in order to arrange the drug deal with Lumbus. The detective's cell phone number appeared on one of Lumbus' cell phones as a number dialed to the phone. Moreover, the fact that Lumbus responded to Overton's call and came to the strip mall to conduct the transaction indicates he was a drug dealer.
 {¶ 37} The evidence also indicated the drugs were packaged for sale for individual use and the money consisted of the following denominations: eighty-eight ones, seventeen fives, seven tens, nineteen twenties and one fifty. This is an unusual breakdown of such a large amount of currency and is indicative of drug trafficking. This court has previously held that evidence the defendant knowingly transported, delivered or distributed drugs may be used by the fact finder to reasonably conclude that money possessed by the defendant was used to facilitate drug transactions as a criminal tool, such as for the purpose of providing any necessary change during drug sales.[18] Therefore, there was evidence that Lumbus was using the cell phones and money for drug trafficking.
 {¶ 38} We realize the jury found Lumbus not guilty of drug trafficking; however, this does not make the possession of criminal tools verdict inconsistent. In criminal cases, Ohio follows the general rule that consistency between verdicts on the several counts of an indictment is unnecessary where the defendant is convicted on one or some of the counts and acquitted on others, and the conviction will generally be upheld irrespective of its rational incompatibility with the acquittal.[19] Accordingly, Lumbus' fifth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and MARY EILEEN KILBANE, J., CONCUR
[1] State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus; State v. Bailey (1992), 83 Ohio App.3d 749.
[2] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[3] State v. Hand, 107 Ohio St.3d 378, 2006-Ohio-18 at ¶ 109; State v.Wade (1978), 53 Ohio St.2d 182, paragraph one of the syllabus; State v.Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus;State v. Langford, Cuyahoga App. No. 80753, 2003-Ohio-159.
[4] Tr. at 565-566.
[5] State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of syllabus; State v. Reed (1996), 110 Ohio App.3d 749, 752. 
[6] State v. Sorrels (1991), 71 Ohio App.3d 162, 165.
[7] State v. Taylor (1993), 66 Ohio St.3d 295, 300-301; State v.Duncan (1978), 53 Ohio St.2d 215, paragraph one of the syllabus.
[8] Taylor, supra at 303.
[9] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[10] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[11] Id. at paragraph two of syllabus.
[12] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[13] (1978), 55 Ohio St.2d 261, syllabus.
[14] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[15] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[16] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[17] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[18] State v. Larios, Cuyahoga App. No. 83507, 2004-Ohio-5730;State v. Tolbert (1996), 116 Ohio App.3d 86.
[19] State v. Adams (1978), 53 Ohio St.2d 223; State v. Woodson
(1985), 24 Ohio App.3d 143; State v. Williams, Cuyahoga App. No. 87218,2006-Ohio-5325.