[Cite as *Rewyal Co. Ltd. Partnership v. Dublin*, 2017-Ohio-367.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Reywal Co. Limited Partnership, et al., | : | |
| Plaintiffs-Appellees, | : | |
| | : | No. 15AP-635 |
| v. | : | (C.P.C. No. 07CV-5329) |
| The City of Dublin, Ohio, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 31, 2017

**On brief:** *Issac Wiles Burkholder & Teetor, LLC, Michael Close* and *Dale D. Cook*, for appellees Reywal Co. Limited Partnership, Mark Sheriff and Sonja Sheriff. **Argued:** *Michael Close.*

**On brief:** *Frost Brown Todd LLC, Stephen J. Smith* and *Yazan S. Ashrawi*, for appellant. **Argued:** *Yazan S. Ashrawi.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant City of Dublin, Ohio ("Dublin"), appeals from a judgment of the Franklin County Court of Common Pleas issued on June 5, 2015, finding in favor plaintiffs-appellees Reywal Co. Limited Partnership ("Reywal"), Diane Banks ("Banks"), Mark Sheriff and Sonja Sheriff ("Sheriffs") (appellees herein referred to collectively as "the landowners") on their petition to detach from Dublin certain real estate owned by them and returned to its prior situs in Perry Township. Because we find that the trial court did not abuse its discretion, we affirm.

No. 15AP-635

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   This matter has a prolonged history in the courts, including this one.  A brief review of that history is helpful at this juncture.

{¶ 3}   Dublin is a municipal corporation formed in accordance with Ohio law.  The landowners own 3 parcels of real estate comprising approximately 41 acres of undeveloped, unplatted farm land ("the parcels"), all of which were annexed to Dublin from Perry Township in 1974.  The parcels are situated in the far northeast corner of Dublin, bordering on the city of Columbus and Perry Township to the east.  The adjoining property to the north is the site of an AEP electrical substation located within Dublin.  The parcels are surrounded by commercial, retail, and residential development.  The record indicates that there is no Dublin infrastructure on the properties and no Dublin roadways on or about the parcels.  The only access to the parcels is from Sawmill Road, which is not in Dublin.

{¶ 4}   On April 18, 2007, the landowners filed in the trial court a petition pursuant to R.C. 709.41 and 709.42 ("the detachment statutes").  The detachment statutes provide for detaching unplatted farm land from a municipal corporation.  The landowners sought to detach the parcels from Dublin and to merge them into Washington Township.  In order to prevail, the landowners were required to establish that they met each of the following four statutory requirements: (1) the parcels are farm lands not within the original corporation limits of Dublin; (2) the parcels are in or will remain within Dublin, the landowners are taxed and will continue to be taxed for municipal purposes in substantial excess of the benefits conferred on them by reason of being in Dublin; (3) the parcels may be detached without materially affecting the best interests or good government of Dublin; and (4) five years have elapsed since the parcels were originally annexed by Dublin.

{¶ 5}   On May 14, 2009, the trial court granted summary judgment in favor of Dublin, finding that the landowners could not establish the properties at issue were, and would continue to be, taxed in substantial excess of the benefits conferred by Dublin.  The landowners appealed to this Court.  In *Reywal Co. L.P. v. Dublin*, 188 Ohio App.3d 1, 2010-Ohio-3013 (10th Dist.) (referred to hereafter as "*Reywal I*"), we reversed the judgment of the trial court, holding that there was a genuine issue of fact regarding whether the farm land was, and would continue to be, taxed in substantial excess of the

benefits conferred by Dublin. We remanded the case to the trial court for further proceedings in accordance with law and consistent with our decision. *Id.* at ¶ 69. Dublin appealed that decision to the Supreme Court of Ohio, which, on December 9, 2010, affirmed the judgment of this court "in judgment only on the authority of *Campbell v. Carlisle,* 127 Ohio St.3d 275, 2010-Ohio-5707" and remanded the case to the trial court for application of *Campbell. Reywal Co. L.P. v. Dublin,* 128 Ohio St.3d 270, 2010-Ohio-5969, ¶ 2.

{¶ 6} A non-jury trial was held September 17 through 19, 2012. The trial court issued its decision nearly three years later on June 5, 2015. Having considered the evidence in accordance with the law and instructions of the Supreme Court and this Court, the trial court held in favor of the landowners, finding they had successfully established all four statutory requirements for detachment of the parcels from Dublin. The trial court ordered the parcels be detached from Dublin and returned to Perry Township, which the trial court found was the most convenient adjacent township in Franklin County. Dublin timely appealed the decision.

## II. ASSIGNMENT OF ERROR

{¶ 7} Dublin presents a sole assignment of error for our review:

> The trial court erred in finding that the Property Owners may detach their Property from the City of Dublin because the Property Owners did not and cannot meet all four requirements for detachment pursuant to Ohio Revised Code 709.42.

Dublin submits the trial court erred in finding (1) the parcels constitute "farm land," (2) the landowners are and will be taxed by Dublin in excess of the benefits conferred by Dublin, and (3) detaching the parcels will not materially affect Dublin's best interests or good government.

## III. DISCUSSION

### A. Standard of Review

{¶ 8} Dublin contends, and the landowners concur, the definition of "farm land" adopted by the trial court for the purposes of interpreting the detachment statutes is a question of law subject to de novo review by this court. We agree. "Interpretation of a statute is a matter of law and, thus, an appellate court must apply a de novo standard of

No. 15AP-635

review." *Campbell v. Carlisle*, 12th Dist. No. CA2009-05-053, 2009-Ohio-6751, ¶ 10, *rev'd sub nom.*, 127 Ohio St.3d 275, 2010-Ohio-5707, citing *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 8. *See also Brennaman v. R.M.I. Co*, 70 Ohio St.3d 460, 466 (1994).

{¶ 9} While questions of statutory interpretation may be reviewed de novo, *see Consilio*, the factual findings underlying those determinations are reviewed for abuse of discretion. *See Americare Healthcare Servs., LLC v. Akabuaku*, 10th Dist. No 12AP-917, 2013-Ohio-3013, ¶ 9. It is well established, in reviewing a trial court's judgment following a bench trial, an appellate court starts with the presumption the trial court's findings are correct. *See, e.g., Lee v. Ohio Dept. of Job & Family Servs.*, 1oth Dist. No. 06AP-625, 2006-Ohio-6658, ¶ 11; *Broadstone v. Quillen*, 162 Ohio App.3d 632, 2005-Ohio-4278, (10th Dist.); and *Patterson v. Patterson,* 3d Dist. No. 17-04-07, 2005-Ohio-2254, ¶ 26, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80 (1984). We may not substitute our judgment for that of the trial court, and must affirm the judgment if it is supported by some competent, credible evidence going to the essential elements of the case. *Lee* at ¶ 11, citing *Reilley v. Richards*, 69 Ohio St.3d 352 (1994); *Koch v. Ohio Dept. of Natural Resources,* 95 Ohio App.3d 193 (10th Dist.1994).

{¶ 10} We find that our review here involves mixed questions of facts and law. Therefore, once we have determined the trial court acted within its discretion in determining facts relevant to its legal determinations, we may review de novo certain questions of law decided by the trial court. By analogy, we cite to *JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18, wherein we discussed mixed questions of fact and law as it relates to our review of trial court decisions on whether to admit hearsay:

> We have predominantly reviewed hearsay decisions for abuse of discretion. *See, e.g., Pontius v. Riverside Radiology & Interventional Assocs.*, 10th Dist. No. 15AP-906, 2016-Ohio-1515, ¶ 15, 49 N.E.3d 353; *Thomas v. Columbia Sussex Corp.*, 10th Dist. No. 10AP-93, 2011-Ohio-17, ¶ 17-18. A number of appellate districts, however, have taken the view that hearsay determinations involve questions of law, which are to be reviewed de novo. *See, e.g., Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. No. 2012-L-145, 2014-Ohio-2875, ¶ 23; *State v. Bates*, 6th Dist. No. WM-12-002, 2013-Ohio-1270, ¶ 41; *State v. Lusher*, 4th Dist. No. 11CA1, 2012-

Ohio-5526, ¶ 49, 982 N.E.2d 1290; *Volpe v. Heather Knoll Retirement Village*, 9th Dist. No. 26215, 2012-Ohio-5404, ¶ 13; *State v. Lumbus*, 8th Dist. No. 87767, 2007-Ohio-74, ¶ 22. Hearsay decisions often require implicit determinations about facts (such as preliminary determinations of who said what in what circumstances) with the result that questions about whether to admit hearsay often are hybrid questions of fact and law. As such, they are based upon the fact-judging abilities of the trial court and are reviewed for abuse of discretion. *Pontius* at ¶ 15; *Thomas* at ¶ 17-18. Yet there is also a law question element to such determinations, and we have frequently noted "that no court has the authority, within its discretion, to commit an error of law." *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7, citing *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶ 70. In *Pontius*, for example, the trial court's abject failure to analyze the applicable hearsay exception in deciding to exclude testimony, constituted an error of law and, thus, an abuse of discretion. *Id.* at ¶ 23-24.

*Liggins* at ¶ 18. Similarly, when reviewing a trial court's decision on a question of law, such as whether a contract exists, there is also a mixed question of fact and law. *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio, Inc.*, 10th Dist. No. 02AP-454, 2003-Ohio-3334, ¶ 49.

"An appellate court may freely review application of the law to the facts. It must, however, show deference to the factual findings made by the trial court. Where there are factual disputes, it is generally the province of the trial court to resolve those disputes by weighing credibility of the proffered testimony."

(Citations omitted.) *DeHoff* at ¶ 49, quoting *Rudd v. Online Resources, Inc.*, 2d Dist. No. 17500 (June 18, 1999).

### B. Did the trial court err in finding the landowners had satisfied all four statutory requirements necessary to detach the parcels from Dublin?

{¶ 11} Since the landowners' detachment petition is governed by the provisions of R.C. 709.41 and 709.42, in order to prevail, the landowners must establish through competent and credible evidence they satisfy all four requirements set forth in those statutes. R.C. 709.41 provides that a detachment action may not be brought within five years from the time the lands were annexed by the municipal corporation. R.C. 709.42,

No. 15AP-635

which addresses the hearing and decision on detachment, sets forth the remaining three requirements:

> If, upon the hearing of a cause of action as provided by section 709.41 of the Revised Code, the court of common pleas finds [1] that the lands are farm lands, and are not within the original limits of the municipal corporation, [2] that by reason of the same being or remaining within the municipal corporation the owner thereof is taxed and will continue to be taxed thereon for municipal purposes in substantial excess of the benefits conferred by reason of such lands being within the municipal corporation, and [3] that said lands may be detached without materially affecting the best interests or good government of such municipal corporation or of the territory therein adjacent to that sought to be detached; then an order and decree may be made by the court, and entered on the record, that the lands be detached from the municipal corporation and be attached to the most convenient adjacent township in the same county. Thereafter the lands shall not be a part of the municipal corporation but shall be a part of the township to which they have been so attached. The costs shall be taxed as may seem right to the court.

(Enumeration added.)

1. **Have five years passed between the time the parcels were annexed to Dublin and the time when the landowners petitioned for detachment?**

{¶ 12} Dublin and the landowners agreed the parcels were annexed into Dublin from Perry Township in 1974. The landowners filed their petition for detachment on April 18, 2007, more than 30 years later. Consequently, the trial court found the landowners have conclusively proven that more than 5 years have passed from the time the land in question was annexed by Dublin to when they petitioned for detachment. We find the trial court did not abuse its discretion in finding the landowners satisfied this requirement of the detachment statutes.

2. **Are the parcels farm lands not within the original municipal corporation limits of Dublin?**

{¶ 13} In considering the other requirements for detachment, the trial court determined no part of the land in question was within the original limits of Dublin municipal corporation and examined whether the parcels were or could be determined to be farm land. Noting that neither of the governing detachment statutes defines the term

No. 15AP-635

"farm land," the trial court concluded the term "must be given its plain, everyday meaning. *Sharp v. Union Carbide Corp.*, 38 Ohio St.3d 69, 70 (1988); R.C. 1.42." (June 5, 2015 Jgmt. Entry at 3.) The trial court examined the differing definitions of "farm land" proposed by the landowners and by Dublin:

> [The landowners] produced testimony that farm land can be defined as unimproved land devoted to or available for the production of crops and other products of the soil, fruits, timber, pasture or buildings for livestock. *Transcript, p. 311-312.* In opening arguments and closing briefs, Dublin argues for a stricter definition specific to the agricultural industry. That definition requires the active cultivation of land for raising crops or animals for food.

> The Court concludes that referencing a definition used by one industry is not the common, everyday meaning of a term as contemplated by common law statutory interpretation. Thus, the Court finds that [the landowners'] definition of "farm land" should be applied, as it is more akin to the plain and ordinary meaning found in a typical English dictionary: "land used or suitable for farming." The *Merriam Webster Dictionary* 274 (1994). "Farm," in turn, is defined as "a tract of land used for raising crops or livestock" or "to raise crops or livestock." *Id.* Thus, the question is whether the Parcels are used or suitable for use in raising crops or livestock and similar agricultural purposes.[1]

> Fn.1 This definition is further supported by the lone legislative attempt to define farmland found by the Court. R.C. 931.01(C) defines "contiguous farmland" to refer to certain land '* * * used for agriculture.' *Id.* Agriculture, in turn, encompasses a much broader spectrum of land use than current, active cultivation of crops.

(June 5, 2015 Jgmt. Entry at 3-4.)

{¶ 14} Dublin argues the trial court's use of the *Merriam Webster Dictionary* definition of "farm land" for the purposes of the detachment statutes is plain reversible error. Dublin submits that the trial court is obligated to use the *Dictionary of Agriculture* definition of "farm land," which is " 'cultivated land, land which is used for raising crops or animals for food.' " (Appellant's Brief at 15, quoting *Dictionary of Agriculture.*) And, Dublin argues, because there was no testimony the parcels were used for raising crops or

No. 15AP-635

animals for food, the parcels cannot be "farm land."  Dublin relies on *Hoffman v. State Med. Bd. of Ohio*, 113 Ohio St.3d 376, 2007-Ohio-2201, in support of this argument:

> "It is established law in Ohio that [in construing statutes], where a word has a technical definition differing from its dictionary definition, it *shall* be construed according to the former." (Emphasis added.) (Citation omitted.) *Hoffman v. State Med. Bd. of Ohio*, 113 Ohio St.3d 376, 2007-Ohio-2201, 865 N.E.2d 1259, ¶ 26, citing *Youngstown Sheet & Tube Co. v. Lindley*, 56 Ohio St.2d 303, 309, 383 N.E.2d 903 (1978). The Court in *Hoffman* further explained that "[a]n axiom of statutory construction is that '[w]ords * * * that have acquired a technical or particular meaning, whether by legislative definition *or otherwise, shall* be construed accordingly.' " (Emphasis added.) *Id.* citing 1.42; *see also State v. Rentex, Inc.,* 51 Ohio App.2d 57, 365 N.E.2d 1274 (8th Dist. 1977). The use of the word "shall" in both instances imposes mandatory compliance. *Ohio Dep't of Liquor Control v. Sons of Italy Lodge 0917*, 65 Ohio St.3d 532, 534, 605 N.E.2d 368, 370 (1992).
>
> Accordingly, the Court's adoption of the general dictionary definition of "farm land" in the context of detachment is inappropriate because the agricultural industry has established a specific definition of "farm land" that differs from that of the general dictionary definition. Therefore, the definition of farm land "shall be construed" in accordance with the industry-specific definition. *See Hoffman, supra.*

(Emphasis sic.)  (Appellant's Brief at 13-14.)

{¶ 15} The *Hoffman* court was presented with the question of whether an Ohio Administrative Code provision that prohibited anesthesiologist assistants from performing specific medical procedures conflicted with a provision of the Ohio Revised Code that permitted anesthesiologist assistants to assist supervising anesthesiologists with the performance of various procedures.  The *Hoffman* court held there was a conflict between the statute and the administrative code regulation that rendered the administrative code regulation invalid.  *Hoffman* at ¶ 1.  Similarly, the case cited by the *Hoffman* court, *Youngstown Sheet & Tube Co. v. Lindley,* 56 Ohio St.2d 303, 309 (1978), concerned terms that were "creatures of federal regulation" with "long-standing federal treatment."  *Id.*  Such a question was not presented in the instant case, as "farm land" is not subject to conflicting definitions set forth in statute, administrative rule, or regulation.

No. 15AP-635

{¶ 16} The record indicates the trial court fully considered Dublin's arguments that the parcels do not constitute farm lands:

> In support of its position that the Parcels do not constitute farmlands, Dublin relies on its proffered strict definition – land used for active cultivation of crops or animals for food – and evidence that the Parcels do not qualify under this definition. For example, the representative owners of all three Parcels concede that no farm equipment is housed or maintained, no food crops are planted or harvested, and no livestock is actively raised on the properties. *Trans., p. 74, 379.* Dublin also points to evidence that the Banks and Sheriff/Banks Parcels are not taxed as CAUV property. Further, all three parcels are zoned for "other residential use." *Exh. B, C, & D.* A portion of the Reywal Parcel has been converted to a dirt track for motorbikes and ATVs. *Trans., p. 327, 335.* Finally, with regard to the Banks Parcel, Dublin argues that the parcel is simply too densely wooded to be considered suitable for farming.

(June 5, 2015 Jgmt. Entry at 5.)

{¶ 17} The record further indicates the trial court carefully examined the evidence as to the parcels' former and current use. The landowners presented testimony that Reywal's parcel had been granted Current Agricultural Use Valuation ("CAUV") for tax purposes, and the parcel that Banks and the Sheriffs purchased in 1987 was owned by a farmer who raised corn and hay on it and who continued to lease and farm the parcel for six months to one year after the purchase. All three parcels are leased to an adjoining property for grazing horses and growing hay. The landowners also presented testimony "that hay is important to a farm and essential when raising animals." *Id.* at 5. Additionally, a real estate appraiser testified on behalf of the landowners that, in his professional opinion, the parcels were farm land.

{¶ 18} The trial court found, after considering all the evidence regarding this requirement, "the greater weight of credible evidence supports the determination that each of the parcels is used or suitable for use in raising crops or livestock and similar agricultural purposes." *Id.* The trial court set forth its reasoning as follows:

> Therefore, the Court concludes that the Parcels are farm lands as contemplated by the detachment statutes. All three parcels are leased to a neighboring landowner who uses the properties as grazing pasture for horses and to sow and raise

> hay. These are all agricultural endeavors, and the fact that the land is leased for such purposes is inconsequential. Dublin's own Community Plan references the Parcels as part of a horse farm. *See Exh. AA, p. 140* ("A horse farm and stable near the interior of the [Summit View/Sawmill] area stretches north to the AEP substation.") Moreover, even if not currently used as such, the evidence supports the finding that the Parcels are *suitable for use* in raising crops or livestock.

> Upon careful review of the evidence presented relevant to the first requirement, the Court concludes that the Parcels are farm lands not within Dublin's original municipal limits.

(Emphasis sic.)  *Id.* at 5-6.

{¶ 19} This Court having carefully reviewed the record finds no error in the trial court having determined the land in question is "farm land" as used in the detachment statutes.  We find the trial court's analysis requires no further amplification.  Therefore, we conclude the trial court did not err in finding the parcels are farm land not within Dublin's original municipal corporation limits.

### 3. Are the parcels taxed for municipal purposes in substantial excess of the benefits conferred upon them by reason of being in Dublin?

{¶ 20} The trial court next examined the issue of whether the parcels are taxed for municipal purposes in substantial excess of the benefits conferred on by reason of being in Dublin.  The landowners contend no benefits are conferred on them by virtue of being in Dublin.  Dublin argues it makes a multitude of general, communal benefits available to the landowners, in addition to the specific benefit of police protection.

{¶ 21} In accordance with the Supreme Court instructions on remand in *Reywal Co. L.P.,* 128 Ohio St.3d 270, the trial court sought to make this determination applying the holding of *Campbell.*  The trial court noted the "concrete guidance" the *Campbell* court provided in determining the amount of municipal taxes paid:

> In *Campbell v. Carlisle* [citation omitted], the Court noted that the statutory language of R.C. 709.42 is clear and unambiguous and, thus, requires no interpretation. *Campbell,* ¶8.

> > R.C. 709.42 requires a trial court presiding over detachment proceedings to determine the amount "the owner * * * *is taxed* and will

No. 15AP-635

> continue to be taxed * * * for municipal purposes."
>
> (emphasis original) *Campbell, supra*, ¶8. Therefore, if (as in *Campbell*) the parcel owner has applied for and been granted CAUV tax valuation, it is that amount and not the greater, non-CAUV amount that must be considered. *Id.,* ¶8, 12. Moreover, it is appropriate to consider the amount that the parcel owner "will continue to be taxed." *Id.,* ¶9. Thus, consideration of increasing or decreasing tax valuations is relevant to the inquiry. Finally, only that portion of total taxes attributable to municipal taxes should be considered. *See Campbell, supra. See also, Reywal Co. L.P. v. City of Dublin, supra* at ¶18. * * *. In this case, the "City/Village" tax comprises the relevant municipal taxes.
>
> With the forgoing in mind, the parties presented both testimonial and documentary evidence establishing that the Reywal Parcel paid Dublin $4,893.78 in municipal taxes from 2000 to 2011. *Exh. 10.* In 2011 (the last tax year discussed), the Reywal Parcel's municipal tax responsibility was $19.03. *Trans., p. 67-68*; *Exh. B.* The Banks/Sheriff Parcel paid Dublin a total of $1,644.02 in municipal taxes during the 2000-2011 timeframe. *Trans., p. 105; Exh. 11.* In 2011, the Banks/Sheriff Parcel's municipal tax responsibility was $323.07. *Trans., p. 160; Exh. C, R.* And, the Banks Parcel paid municipal taxes to Dublin in the amount of $1,687.25 from 2000 through 2011. *Trans., p. 105; Exh. 12.* In 2011, the Banks Parcel's municipal tax responsibility was $356.69. *Trans., p. 154; Exh. D, O.* Banks also testified that the municipal tax burden on the Parcels is rising. *Trans., p. 105, 106.*

(June 5, 2015 Jgmt. Entry at 6-7.)

{¶ 22} The trial court next engaged in "a complicated weighing of interests" to determine whether the landowners' municipal tax burden is in substantial excess of the benefits conferred upon the parcels by virtue of being in Dublin. *Id.* at 6. The trial court followed the guidance provided by rulings of the Fifth and Tenth District Courts of Appeals in, respectively, *Smith Evergreen Nursery, Inc. v. Village of Magnolia, Inc.,* 5th Dist. No. 2009 CA 00003, 2009-Ohio-6560 ¶ 19-23, *appeal not accepted*, 124 Ohio St.3d 1522, 2010-Ohio-1075, and *Reywal I,* in which this Court favorably discussed the *Smith Evergreen* decision. The trial court noted "[t]he second element of the detachment

No. 15AP-635

analysis was the sole focus *Smith Evergreen*," in which the Fifth District had observed the following:

> The General Assembly has not set forth in the [statute] whether the "substantial excess" question requires a comparative cost analysis of the services provided to the landowner by the municipality versus those provided by the township, as opposed to a simpler evaluation of whether the current tax burden on the landowner for his or her municipal services is substantially excessive per se.

(June 5, 2015 Jgmt. Entry at 8, quoting *Smith Evergreen* at ¶ 24.)

{¶ 23} The *Smith Evergreen* trial court had "applied a comparative approach; i.e., an assessment of present municipal services vis-a-vis township services after detachment." *Smith Evergreen* at ¶ 26. The trial court in the instant case observed that the Fifth District, while approving of and affirming the comparative approach, also noted the following:

> We hold that a trial court could also address the issue by fundamentality considering whether or not the landowner, [at present time], is paying a substantially excessive amount [for the] services provided by the municipality. "Substantial" is defined as "considerable in importance, value, degree, amount or extent." *See Phillips v. Haidet (1997), 119 Ohio App. 3d 322, 327, 695 N.E.2d 292*, citing American Heritage Dictionary (2 Ed. 1985) 1213.

(June 5, 2015 Jgmt. Entry at 9, quoting *Smith Evergreen* at ¶ 26.)

{¶ 24} The trial court here heeded this Court's critique in *Reywal I* of the trial court's analysis in granting summary judgment for Dublin on May 14, 2009:

> The trial court here did no comparison of the current municipal services compared to township services after detachment. [And,] There was * * * no evaluation of the cost of the services to determine if the property owners, at the present time, are paying a substantially excessive amount for the services provided by the municipality.

*Id.* at 9, quoting *Reywal I* at ¶ 52. The trial court noted further that the holding of *Reywal I* instructed it:

> [T]o analyze the issue of whether [the landowners'] municipal tax burden is in substantial excess of the benefits conferred by

> [] comparing the present municipal services in relation to those of the township and/or by a fundamental cost-benefit analysis. Under either approach, the Court must first determine what benefits are conferred upon the Parcels.

*Id.* at 9.

{¶ 25} The trial court examined the question of what, if any, benefits the landowners received by being located in Dublin. The record before the trial court indicated Dublin did not provide the parcels with leaf or trash pickup, snow removal or utility services. One of the landowners, Mr. Sheriff, testified that Dublin refused to provide trash service and had cited the property and required the landowners to have trash removed at their expense. Dublin's City Manager, Marsha Grigsby, conceded that Dublin did not provide utility services to the parcels.

{¶ 26} With respect to "a multitude of general, communal benefits" Dublin contends are available to the landowners, the trial court stated:

> The Court further finds that the majority of the general, communal benefits espoused by Dublin are not actually bestowed upon the land or the owners and, therefore, are not relevant to this analysis. There is no infrastructure on the Parcels to benefit from the city's planning or maintenance. Similarly, there is there is [sic] no sewer or utility service to benefit from the city's attention. Thus, as best, Dublin arguably bestows access to Dublin parks, recreation and community programs and city departments. Included in this, the Court does find that police protection is a benefit conferred upon the [landowners] by Dublin.

*Id.* at 10.

### a. The Trial Court's "Comparative Approach—Services in Dublin v. Services in Perry Township."

{¶ 27} The trial court compared the services available to the landowners in Dublin to the services available to them in Perry Township. On consideration of the evidence, the trial court found the landowners had "presented ample, credible evidence that the services available in Perry Township compare favorably with those in Dublin." *Id.* at 10-11. The trial court enumerated some of the benefits available from both Dublin and Perry Township, including: full-time employees devoted to planning and zoning; full-time officers in their police departments, both of which had won public accolades; equally

No. 15AP-635

available fire and emergency services; and general staff to interact with residents. The trial court found, to the extent Dublin "touts these services as benefits conferred upon the landowners, those same services are equally available in Perry Township." *Id.* at 11. The trial court noted further that Perry Township offers the additional services of trash and refuse collection, road maintenance, snow removal, leaf removal, and mosquito spraying.

{¶ 28} The trial court observed, while Perry Township lacks a parks and recreation department, it "offer[s] country clubs, tennis courts, fishing pond, community gardens and green space." *Id.,* citing Sept. 17, 2012 Tr. Vol. I at 221. The township does not have an engineering or economic development department, but the Township Administrator, Robert Myers, testified those departments were "unnecessary" because the township "is 97% residential and has no need to develop new roads or infrastructure." *Id.,* citing Tr. Vol. I at 221-223. The trial court noted further, "given the undeveloped state of the Parcels, the services provided by these departments currently confer no benefit from Dublin." *Id.* Additionally, the trial court found misplaced Dublin's reliance on "a pure comparison of the number of employees devoted to the shared departments," concluding the record before it established that Dublin and Perry Township are "staffed appropriately to meet the needs of" their respective sizes and demands. *Id.* at 11-12.

{¶ 29} The trial court, "upon consideration of the presented evidence," found the landowners "enjoy no comparative benefit by staying in Dublin as opposed to Perry Township." *Id.* at 14. Moreover, the trial court found the lack of sewer service, or willingness to provide sewer service, makes it detrimental for the landowners to stay in Dublin because the parcels cannot be developed or used "in any meaningful manner," whereas sewer service would be accessible to the parcels upon detaching from Dublin and returning to Perry Township. *Id.* The trial court concluded, "upon a comparison of current municipal services to township services after detachment, the Court concludes that [the landowners] are taxed, and will continue to be taxed, for municipal purposes in substantial excess of the benefits conferred upon them by virtue of being located in Dublin." *Id.* We find no error in this assessment. The trial court went on to examine the taxing benefits question from another perspective.

### b. The Trial Court's "Cost of Service Approach—Are Plaintiffs paying too much for Dublin Services?"

{¶ 30} The trial court next employed a cost of services analysis, the second method espoused in *Smith Evergreen* and approved in *Reywal I*. This method involves "a seemingly more direct cost/benefit analysis in which the Court must discern whether the [landowners], at present time, are being taxed a substantially excessive amount for the services provided by [Dublin]." *Id.* at 14. The trial court found "this analysis must be limited to those specific services actually conferred upon the landowners, not the more general intangibles * * * cited by Dublin." *Id.* at 14-15. The trial court concluded the sole benefit Dublin actually conferred on the landowners was police service and protection. The trial court assessed the cost of that service to the landowners.

{¶ 31} Dublin's city manager testified that Dublin charges $130 per hour for police services for events held inside the city by outside organizations. Dublin did not, however, provide any evidence that that hourly rate applies to the regular duties of Dublin police officers carrying out their duties to Dublin citizens on a daily basis. The trial court declined, therefore, to find the $130 hourly rate "is an absolute demonstration of the regular cost of providing police protection to each and every one of Dublin's landowners." *Id.* at 15.

{¶ 32} After reviewing the evidence of the actual police service provided to the landowners, the trial court stated:

> In short, there is evidence of five [police] calls directly attributable to the [landowners] over the course of approximately ten years. Two calls attributable to the Reywal Parcel, which contributed $4,893.78 in municipal taxes over a similar time frame; three calls attributable to the Banks/Sheriff Parcel, which contributed $1,644.02 in municipal taxes over that time frame; and zero calls attributable to the Banks Parcel, which contributed $1687.25 over that time frame. Even using Dublin's rate of $130/hour and assuming that each call took one hour, that is an exchange of $260 for $4,893.78; $390 for $1,644.02; and $0 for $1687.25. Under a cost/benefit analysis, the Court finds that this exchange represents taxation in a substantially excessive amount for the service provided by the municipality.

*Id.* at 16.

{¶ 33} The trial court summed up its analysis as follows:

No. 15AP-635

> Thus, whether under a comparative approach or a cost/benefit analysis, the Court concludes that [the landowners] have established that the Parcels are taxed and will continue to be taxed for municipal purposes in substantial excess of the benefits conferred upon them by reason of being in Dublin.

Id.

{¶ 34} On review, we conclude the trial court's finding that the parcels are taxed for municipal purposes in substantial excess of the benefits conferred upon by reason of being in Dublin is based on competent and credible evidence. The trial court did not abuse its discretion in finding the landowners satisfied this requirement of the detachment statutes.

### 4. Can the parcels be detached without materially affecting the best interest or good government of Dublin?

{¶ 35} As a preliminary matter, the trial court found the landowners had the ultimate burden of proof in establishing all the elements for detachment, relying on *Hahn Adventure, LLC v. Village of Thornsville,* 5th Dist. No. 13 CA 13, 2014-Ohio-3387, ¶ 15. The trial court explained further, however, that while the landowners must produce evidence demonstrating that detachment would not materially affect Dublin's best interest or good government, Dublin must demonstrate that detachment would materially affect its best interests or good government. The trial court found this sharing of the burden of production "comports with the Fifth District's refusal in *Smith Evergreen* and *Hahn Adventure* to automatically elevate the municipality's interests above those of the landowners seeking detachment: 'we give no preference, when analyzing R.C. 709.42, to the general trend in Ohio favoring annexation of land into municipalities.' " *Smith Evergreen, supra*, ¶18; *Hahn Adventure, supra,* 20." (June 5, 2015 Jgmt. Entry at 17.)

{¶ 36} The trial court reviewed the evidence, which indicated Dublin would lose only 41 acres of its approximately 25-30 square miles of territory, only $698.69 in municipal taxes, and no income tax because the parcels generate none. The trial court noted "Dublin admits that the loss of tax revenue from the Parcels [would be] insignificant and would not materially affect its best interests or good government." *Id.* at 18, citing Sept. 19, 2012 Tr. Vol. III at 568-70.

{¶ 37} The trial court took notice of the parcels' location on the fringe of Dublin, observing the parcels' detachment would not change the identities of the neighboring communities. The trial court also took notice that "Dublin is surrounded by at least ten governing municipalities or townships and spans three counties, the existence of which does not upset its ability to pursue cohesive and comprehensive long-range municipal planning." *Id.*

{¶ 38} The trial court then turned to the testimony presented by the landowners that detachment would have no adverse effect on adjacent property owners; the only access to the parcels is maintained by the city of Columbus; there are no roads on the parcels connecting them to adjoining land; and the landowners' plans to develop the parcels would run through formal channels requiring some form of municipal or township approval.

{¶ 39} Dublin countered the landowners' evidence by arguing the detachment would leave Dublin without any control over the development of, or the provision of municipal services to, the parcels and create a "township pocket." (Sept. 18, 2012 Tr. Vol. II at 414.) Dublin also contends that detachment would lead to zoning shopping.

{¶ 40} The trial court found that the landowners had "presented competent, credible evidence that the Parcels can be detached without materially affecting the best interests or good government of Dublin," and thus had successfully met their burden as to this element. (June 5, 2015 Jgmt. Entry at 21.) On review, we find no error in the trial court's decision and find it to be based on competent, credible evidence.

{¶ 41} Based on the evidence, the trial court found the landowners had established all four of the statutory requirements to detach their parcels from Dublin. In accordance with the governing law, the trial court issued an order that the parcels be detached from Dublin and be attached to Perry Township, which the trial court determined to be "the most convenient adjacent township in the same county." R.C. 709.42.

### 5. Review of trial court's factual findings under R.C. 709.41 and 709.42—Competent and credible evidence.

{¶ 42} The remaining aspects of Dublin's assignment of error challenge the factual findings of the trial court in a non-jury trial. In reviewing a trial court's judgment following a bench trial, " 'an appellate court is "guided by the presumption" that the trial court's findings are correct.' " *Lee* at ¶ 11, quoting *Broadstone* at 637, citing *Patterson* at

No. 15AP-635

¶ 26, quoting *Seasons Coal Co.* at 79-80. We may not substitute our judgment for that of the trial court, and must affirm the judgment if it is supported by some competent, credible evidence going to the essential elements of the case. *Lee* at ¶ 11, citing *Reilley*; *Koch.* The record evidences the trial court's judgment is supported by competent, credible evidence going to the relevant elements of this matter.

## IV. CONCLUSION

{¶ 43} On review, we find no basis for reversal as a matter of law of the trial court's grant of detachment pursuant to R.C. 709.41 and 709.42 in favor of the landowners.

{¶ 44} Dublin's sole assignment of error is overruled.

{¶ 45} For the reasons stated in the foregoing opinion, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

TYACK, P.J., and HORTON, J., concur.

———————————